In re INTER–ISLAND VESSEL
COMPANY, INC., d/b/a "Bill
of Rights", Debtor.

Bankruptcy No. 85–758–HL.

United States Bankruptcy Court,
D. Massachusetts.

July 6, 1988.

## MEMORANDUM ON CLAIM OF JOSEPH M. DAVIS, SR.

HAROLD LAVIEN, Bankruptcy Judge.

The matters before the Court are the trustee's objections to two claims as a secured creditor filed by Polly Stiles in her capacity as conservator for her father, Joseph M. Davis, Sr. One secured claim is for the amount of $272,249.00 and the other secured claim is for the amount of $407,449.00.

The Court, at a hearing on April 22, 1988, disallowed the claim of Ms. Stiles for the amount of $272,249.00 as being duplicative. Counsel agreed during the same hearing that the remaining claim was unsecured. The claim was based on eight promissory notes issued by the debtor, Inter–Island Vessel Company ("I–IVC") to Joseph M. Davis, Sr., hereinafter referred to as Davis, Sr.[1] The matter was continued to May 9, 1988 for an evidentiary hearing on the factual issues raised by the trustee's objections; namely, the statute of limitations, payment and consideration or capital contribution.

At the May 9, 1988 hearing, Ms. Stiles proferred eight promissory notes issued by the debtor payable to Davis, Sr. as prima facie evidence of the debtor's obligation to Davis, Sr. The said notes are as follows:

Note 1 dated June 1, 1971 in the amount of $15,000, payable on demand;

Note 2 dated August 20, 1971 in the amount of $52,000, payable in full at the end of 10 years and guaranteed personally by Joseph M. Davis, Jr.;

Note 3 dated November 22, 1971 in the amount of $30,000, payable after 1 year;

---

1. Counsel for Ms. Stiles has requested in her memoranda that the Court allow an unsecured claim of $20,000. Assuming without deciding an appropriate claim has been filed, until the trustee, if he so wishes, files an objection to the claim and thereby places the matter before the Court, the Court need take no action at this time. 11 U.S.C. § 502(a).

Note 4 dated November 24, 1971 in the amount of $20,000, payable on demand; Note 5 dated October 24, 1974 in the amount of $35,000, payable in full at the end of 10 years and guaranteed personally by Joseph M. Davis, Jr.; Note 6 dated June 1, 1984 in the amount of $30,000, payable upon demand and guaranteed personally by Joseph M. Davis, Jr.; Note 7 dated May 22, 1985, 1985 in the amount of $400, payable on demand; Note 8 dated July 3, 1985 in the amount of $400; and payable on demand.

The trustee assented to allow Notes 7 and 8 as an unsecured claim for the amount of $800.

To further bolster her claim, Ms. Stiles submitted a July 23, 1985 sworn deposition of Davis, Sr., taken in his son's divorce action, in which Davis, Sr. testified that Notes 2, 5 and 6 were never repaid.[2] In addition, Ms. Stiles submitted a personal mortgage granted by Joseph M. Davis, Jr. (hereinafter referred to as Davis, Jr.) to Davis, Sr. on March 29, 1985 for the amount of $117,000 to secure the payment of Notes 2, 5 and 6, which Davis, Jr. personally guaranteed.

As to the deposition and mortgage, it appears that Davis, Jr., the son of Davis, Sr., was the chief executive officer of the debtor until he became embroiled in divorce proceedings which pre-dated both the mortgage and the deposition. It was in the Davis' interests to reduce the equity of Davis, Jr. in the debtor and also the value of the debtor's assets so as to lessen the property settlement. Davis, Jr.'s wife sought to reach the debtor's boat, its sole asset and, in fact, the bankruptcy was precipitated by the seizure of the boat. In his deposition, Davis, Sr. attempted to explain how the debtor is indebted to him. The testimony is vague, evasive, and contradictory. At one point, Davis, Sr. admits that the debtor obtained a mortgage on the debtor's property to pay him back on Note 2. He then makes the improbable claim

that this corporate loan, secured by corporate assets was, in fact, a personal loan to Davis, Sr. and, therefore, he was never repaid. Notwithstanding counsel's unsubstantiated allegations that Davis, Sr. guaranteed the corporate loan, it is uncontested that Davis, Sr. was paid back in full on Note 2 from the corporate loan.

The deposition also contains contradictory testimony in which Davis, Sr. claims at one point to have bought stock in the debtor in 1983 but, at another point, claims to have bought all of his stock in the debtor in the early 1970's. The Court does not find the deposition very credible and both the deposition and mortgage have to be weighed in light of the acrimonious divorce with its potential self-serving motives. The Court does not find this evidence strong enough to support the claimant's burden of proof.

Another exhibit submitted by Ms. Stiles is a letter, on personal stationery, in which Davis, Jr. personally agreed on a March 11, 1983 letter, to pay $10,000—$12,000 in 1983 for Davis, Sr.'s tax program until a final accounting could be made. Ms. Stiles received this letter from Davis, Jr. after Davis, Jr. denied that he or the debtor owed Davis, Sr. money. Aside from the vagueness of the letter and its failure to refer to any corporate debts or notes, it is written on Joseph M. Davis, Jr.'s stationery and is only signed by him, individually.

The final piece of evidence is Joseph M. Davis, Sr.'s checkbook in which three check stubs from the period of 1971–1973 bear notations that the checks were written to pay interest on a $30,000 loan Davis, Sr. took out on behalf of the debtor. The checkbook also contains numerous notations of payments to the debtor and banks to which the debtor owed money. The debtor issued a $30,000 note to Davis, Sr. on November 21, 1971 and a $20,000 note to Davis, Sr. on November 24, 1971. Joseph M. Davis, Jr., chief executive officer of the debtor in 1971, testified that Davis, Sr. was given the first promissory note of

---

2. Davis, Sr. was not available to testify because he has been judicially determined as incompetent.

$30,000 but it was never funded. Davis, Jr. also stated that actually, instead of the $50,000. represented by both notes, Davis, Sr. did loan the debtor $20,000 as represented by the November 24th promissory note. The other check stubs do no more than establish that Davis, Sr. gave money to the debtor and Joseph M. Davis, Jr. The Court has no means to determine if the checks were loans, capital contributions, or even gifts from a father to a son, as indicated in other testimony by Davis, Jr.

Counsel for Ms. Stiles claims that Notes 2, 5 and 6 were reaffirmed as outstanding debts by the debtor because they were listed on the debtor's bankruptcy petition. Rhode Island law, which counsel agreed is applicable in this case, has clearly ruled that the listing of debts in a bankruptcy schedule of debts does not reaffirm their existence, *Hidden v. Cozzens*, 2 R.I. 401 (1853); *see also, In re Vertientes*, 845 F.2d 57 (3rd Cir.1988). In addition, the Court will not give much credence to debts listed as owing to the person signing the schedule of debts without corroboration. In this case, the statements were obviously self-serving since Davis, Sr. signed the schedules.

The trustee challenged that any money was due under promissory notes 1–6. In support of his contention, the trustee had Davis, Jr. testify. Davis, Jr. stated that Notes 1, 3, 5 and 6 were never funded. Davis, Jr. explained that Davis, Sr.'s practice was to demand a promissory note when the debtor appeared to have a need for money and to fund the note afterwards if the debtor actually needed the money.

Davis, Jr. admits that Davis, Sr. did fund Notes 2 and 5. As previously explained, it is clear that Davis, Sr. loaned the full $52,-000 referred to by Note 2 and was repaid. The second funded note is Note 4 in the amount of $20,000. Davis, Jr. claims that the debtor paid the note in full and produced checks from the debtor to Davis, Sr. in the amount of $40,332 as evidence of payment.

The Court at the end of the hearing allowed both sides to brief the applicability of the Rhode Island Statute of Limitations to the various promissory notes. Polly Stiles was also allowed to file a response to the trustee's memorandum. All three memoranda have been filed.

The memoranda have done a very good job of briefing the Rhode Island Statute of Limitations, the doctrine of reaffirmation, and equitable subordination. However, these issues are no longer relevant because the Court finds that there is no claim.

■ Polly Stiles failed to prove that the promissory notes are still due and owing. She has not met her burden of proof. The Court finds credible Davis, Jr.'s testimony that no notes are due and owing.

■ Polly Stiles filing her proof of claim automatically entitles her to a presumption that the proof of claim is valid. Bankruptcy Rule 3001(f) explicitly states, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Under this rule, a claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case. *In re Mobile Steel Co.*, 563 F.2d 692 (5th Cir.1977); *In re American Apparel, Inc.*, 55 B.R. 160, 162 (Bankr.E.D.Pa.1985); *In re Beverages Intern Ltd.*, 50 B.R. 273 (Bankr.D.Mass. 1985).

■ This Court has previously explained the burden of proof is on the claimant once the objecting party has removed the presumption:

Once the objecting party has met this initial burden the claimant must then demonstrate the fairness and good faith of the conduct. *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939). Where a claimant is an insider or an affiliate of the debtor, or where the creditor exercises control over or domination of the debtor, his dealings with the debtor are subject to strict scrutiny. *Pepper v. Litton*, 308 U.S. 295, 306–07, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939); *In re T.E. Mercer*, 16 B.R. 176 (Bankr.N. D.Tex.1981). The burden is on an insider claimant to show the inherent fairness and good faith of the challenged transac-

tion. *In re Teltronics Services, Inc.,* 29 B.R. 139 (Bankr.D.N.Y.1983).

*In re Beverages Intern Ltd.,* 50 B.R. 273, 280–81 (Bankr.D.Mass.1985).

█ Polly Stiles' claim that Davis, Sr. was not an insider subject to strict scrutiny, lacks any legal basis. Davis, Sr. was the president and majority shareholder of the debtor as well as the person who signed the bankruptcy petition. In addition, Davis, Sr. is the father of Davis, Jr. who undeniably managed the debtor. The Bankruptcy Code explicitly includes both officers of corporations and relatives of the person in control of the debtor as insiders:

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor; [are insiders]

11 U.S.C. § 101(30).

Even if the Bankruptcy Code's definitions of insider did not encompass Davis, Sr., his close relationship with the debtor subjects transactions made between the two parties to careful scrutiny. *Matter of Missionary Baptist Foundation of America,* 712 F.2d 206 (5th Cir.1983); *In re Benson,* 57 B.R. 226 (Bankr.N.D. Ohio 1986); *Jackson Purchase Production Credit Association v. Taylor,* 29 B.R. 5 (Bankr.W.D.Ky.1983); *In re Thomas,* 7 B.R. 389 (Bankr.W.D.Va. 1980). One court has expanded to definition of insider to include a debtor's fiancee's parents. *Matter of Mantanino,* 15 B.R. 307 (Bankr.D.N.J.1981).

The Court finds that Davis, Jr.'s testimony, notwithstanding any doubts it may have about his credibility, that Notes 1–6 were repaid or not funded is sufficient to rebut the presumption that the proof of claim is valid. Ms. Stiles has not presented evidence of the transactions that contradict Davis, Jr. and that can withstand any level of scrutiny, let alone strict scrutiny. The Court, therefore, finds that Ms. Stiles is not entitled to an unsecured claim in any amount for debts represented by Notes 1–6.

This case clearly illustrates the need to place the burden of proof as to pre-petition acts of the debtor, to the extent permissible, on the insider. The insiders are the people who were in the position to clearly document or obfuscate the debtor's pre-petition actions. The reasons for obfuscation can be endless and can include insider theft, incompetence and, as this case illustrates, the minimization of the property settlement to an insider's divorcing spouse. The insider should not be able to collect, as post-petition dividends, on claims based on pre-petition promissory notes signed by his son when the trustee cannot find any evidence of the debt in the debtor's books and records. This is especially true when the chief executive officer at the time denies any liability and the insider has no personal records of his financial relationship with the debtor. The potential for fraud is just too great.

The Court will enter an Order allowing Polly Stiles, as conservator of Joseph M. Davis, Sr., an unsecured claim for $800.