**In re Karriem El–Amin SHABAZZ, Debtor.**

**Bankruptcy No. 96–12891–SSM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Nov. 14, 1996.

Karriem El–Amin Shabazz, Oakton, VA, Debtor pro se.

Robert K. Coulter, Assistant United States Attorney, Alexandria, VA, for Internal Revenue Service.

Gerald M. O'Donnell, Alexandria, VA, Standing chapter 13 trustee.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the debtor's objection to the proof of claim filed by the Internal Revenue Service ("IRS"). At an initial hearing held on October 8, 1996, the court ruled that the proof of claim was for-

mally defective because it did not contain, as required, the printed name and title of the person who signed it. The court granted the IRS 20 days in which to file an amended claim and set a further hearing for November 5, 1996, to rule on the remaining issues raised by the debtor. At that hearing, the evidence of the parties was taken, and the court then took the matter under advisement, in part to give the debtor an opportunity to respond to a recent opinion cited by the Government. The debtor has filed a post-hearing memorandum, and the matter is ripe for determination.[1]

Upon consideration of the evidence and the arguments of the parties, the court concludes that the objection to the IRS claim should be overruled and the claim, with one slight adjustment, allowed. This memorandum opinion constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

### Facts

The debtor, Karriem El–Amin Shabazz, representing himself *pro se,* filed a voluntary chapter 13 petition in this court on May 30, 1996. This is the fourth chapter 13 case he has filed in this court in the space of approximately two and a half years. The prior filings, and their disposition, are as follows:

| Date Filed | Case Number | Disposition |
|---|---|---|
| Jan. 27, 1994 | 94–10304–MVB | Dismissed 10/17/94 after confirmation denied. |
| Oct. 25, 1994 | 94–14067–DOT | Dismissed 7/20/95 after confirmation of amended plan denied. Debtor's motion for relief from dismissal order denied 9/13/95. |
| Oct. 16, 1995 | 95–14536–MVB | Dismissed 8/26/96 after confirmation of plan denied. · Debtor's motion to amend order denied 5/21/96. |

On his schedules, the debtor listed a disputed priority claim of the IRS in the amount of $11,046.00 for income taxes incurred for

---

1. With his memorandum, the debtor also filed an affidavit of bias under 28 U.S.C. § 144. For reasons to be set forth in a separate memoran-

dum opinion, the court has determined that the filing of the affidavit does not prevent the court from ruling on the objection to claim.

the years "1990+" and a disputed unsecured IRS claim in the amount of $28,585.66. The only other claims listed on the schedules are a personal property tax claim (also disputed) of $2,599.30 and a student loan debt of $12,964.83. On June 14, 1996, the debtor filed a chapter 13 plan that provided for payment of an IRS priority claim in the amount of $12,000.00 and a zero percent payment to unsecured creditors. The IRS objected to confirmation. By memorandum opinion and order dated September 16, 1996, this court denied confirmation of the plan.

In the interim, the IRS filed a proof of claim on July 25, 1996, in the aggregate amount of $64,958.53 for unpaid income taxes, including penalties and interest. Of that sum, $48,188.31 is asserted as a priority claim and $16,770.22 as a general unsecured claim. The priority tax claims relate to tax years 1990 through 1995. For two of those years (1994 and 1995), the tax liability is estimated, since the debtor has not filed returns. On September 17, 1996, after confirmation of his plan was denied, the debtor filed an objection to the IRS claim. As noted above, a hearing on the objection was held on October 8, 1996. At the hearing, the court ruled that the proof of claim had not been properly signed and was therefore formally defective, but the court granted the IRS a period of 20 days in which to file an amended proof of claim and set a further hearing for November 5, 1996.[2] An order reflecting the court's ruling was entered on the docket October 9, 1996.

On October 28, 1996, the IRS filed an amended proof of claim setting forth a claim for the tax years 1987 and 1990 through 1995 in the same amounts as the original proof of claim. An evidentiary hearing was held on November 5, 1996, at which the debtor filed in open court an objection to the amended claim. The amended proof of claim was signed by Linda Lorello, a GS–9 Bankruptcy Specialist in the Proceedings and Insolvency Unit of the IRS District Office in Richmond, Virginia. Ms. Lorello is authorized to sign proofs of claim on behalf of the IRS by virtue of Order No. 51 (Rev. 8) dated November 8, 1985, Handbook of Delegation Orders, p. 1229–21 (2–29–96). She prepared the proof of claim, with respect to the tax years 1987 and 1990 through 1993, by reference to the official record of assessments maintained on the IRS computer system. For the years 1994 and 1995, for which the computer system reflected that tax returns had not been filed, she estimated the tax for each year at the same amount as 1993, the last year for which a return was filed. The returns filed by the debtor for 1990 through 1993—all of which were filed on March 20, 1995[3]—reflect the following tax liabilities, exclusive of penalties for failure to make estimated tax payments:

| Year | Tax | Withholding | Tax Due |
|------|-----|-------------|---------|
| 1990 | $7,208 | $4,005 | $3,203 |
| 1991 | $8,003 | $1,668 | $6,335 |
| 1992 | $7,564 | $ 0 | $7,564 |
| 1993 | $7,843 | $ 0 | $7,843 |

Certificates of assessment for the tax years 1987 and 1990 through 1995 were introduced into evidence by the IRS. For 1987, the certificate reflects a tax due, exclusive of penalties and interest, of $1,421 and withholding credits of $166. The difference, $1,255, is the same amount shown on the proof of claim as the tax due for that period. For 1990, the certificate reflects an assessment of $8,482, an abatement of $1,274,[4] and withholding credits of $4,005. The net, $3,203, is the same amount shown on the proof of claim and on the debtor's 1990 tax

---

2. The court also ruled: (1) that a proof of claim is not required to be executed under oath, and the IRS claim was not invalid for not having been executed under oath, and (2) that the IRS claim was not deficient solely because certificates of assessment were not attached. Both of these issues will be discussed in more detail below.

3. An order had been entered by this court in the debtor's prior chapter 13 case directing that the returns be filed.

4. While the certificate does not state the reason for the abatement, it appears that an initial assessment was made on December 26, 1994 in the amount of $8,605. Since the debtor's return was not filed until March 20, 1995, the assessment was presumably made on the basis of a substitute return executed by the Secretary of the Treasury. After the debtor's return was received, the IRS abated the prior assessment on June 5, 1995, to the extent it exceeded the tax shown due on the debtor's return.

return. For 1991, the certificate reflects an assessment of $8,605, an abatement of $602, and withholding credits of $1,667. The net, $6,336, is the same as shown on the proof of claim and is only $1 more than the amount shown on the debtor's return.[5] For 1992, no assessment has been made, and the amount shown on the proof of claim is simply the amount reflected on the debtor's return. For 1993, the certificate reflects an assessment of $7,843, which is the same amount shown on debtor's return for that year and the proof of claim. For 1994 and 1995, the certificates reflect that no assessment has been made, since the debtor did not file returns for either year. In addition to taxes, the certificates reflect the assessment of penalties as follows: $727.75 for 1987,[6] $1,680.07 for 1990, $3,442.50 for 1991, and $2,367.80 for 1993.

The debtor, called by the IRS as an adverse witness, invoked the Fifth Amendment when asked whether he had filed returns for 1987, 1994 and 1995 but admitted that he had earned at least as much in each of the latter two years as he had earned in 1993. The debtor also testified that he had filed the returns for 1990 through 1993 "under duress" in his prior chapter 13 case. However, he did not testify that the returns were in error in any material respect.[7] He did testify that he believed that wages are not subject to Federal income taxation, a belief he claimed derived from his study of the Constitution and the Internal Revenue Code.

### Conclusions of Law and Discussion

This court has subject-matter jurisdiction over this controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of

reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### I.

 Except in chapter 11 cases, in which certain scheduled claims are "deemed filed,"[8] a creditor desiring to receive distributions in a bankruptcy case must file a timely proof of claim. § 501, Bankruptcy Code; Fed.R.Bankr.P. 3002(a). Once filed, a proof of claim "is deemed allowed" unless a party in interest objects. § 502(a), Bankruptcy Code. A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes "prima facie evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3002(f). As a result, the party objecting to a properly filed proof of claim has the initial burden of presenting sufficient probative evidence to overcome such prima facie effect. *In re C–4 Media Cable South, L.P.*, 150 B.R. 374, 377 (Bankr. E.D.Va.1992). Once the debtor has done so, the burden of proof then shifts to the creditor to establish the validity and amount of its claim. Where, however, a tax claim is involved, and the specific issue is one on which, in a nonbankruptcy forum, the taxpayer would have the burden of proof, a debtor-taxpayer in bankruptcy must carry the burden of proof on that issue in connection with an objection to claim. *IRS v. Levy (In re Landbank Equity Corporation)*, 973 F.2d 265 (4th Cir.1992) (debtor-taxpayer has burden of proof on disallowed deductions).

In the present case, the debtor's objection to the IRS claim sets forth no facts showing

---

**5.** The difference arises because the debtor claimed $1 more in withholding than he was given credit for by the IRS.

**6.** The proof of claim asserts a penalty liability of $972.47 for 1987. The reason for the discrepancy is unexplained, but it appears that the figure shown on the proof of claim may include interest on the penalty, even though the proof of claim appears to state that interest has not been computed on penalties related to unsecured general claims. Accordingly, it appears that the non-priority portion of the claim is overstated by $244.72. This will be corrected by the court in its order allowing the claim.

**7.** There was a suggestion during the debtor's testimony that the returns may have omitted rental income from a house the debtor owns. The debtor's schedule of income (Schedule I) filed in this and his prior case reflected that he received $700 per month as rental income. The debtor alternately claimed he could not remember, and invoked the Fifth Amendment concerning, whether he received rental income during the period covered by the 1990 through 1993 returns.

**8.** § 1111(a), Bankruptcy Code; Fed.R.Bankr.P. 3003(b)(1).

that he does not owe the taxes reflected on the proof of claim. The thrust of the objection rather is that the proof of claim is formally defective and therefore fraudulent on its face, so that not only is there nothing for the debtor to rebut, but those who signed the proof of claim should be prosecuted. Specifically, the debtor argues that the proof of claim does not show that it was signed by someone who had actual authority to do so, that it was not signed under oath or penalty of perjury, that supporting documents were not attached, that the Secretary of the Treasury failed to execute substitute returns under 26 U.S.C. § 6020(b) for the two tax years the debtor did not file returns, and that the IRS has consistently failed to respond to his correspondence challenging the assessments against him.

## II.

As a threshold issue, the court must determine whether the debtor's objection is foreclosed by the principles of either *res judicata* or collateral estoppel. *Res judicata*, or claim preclusion, prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties regardless of whether they were asserted or determined in the prior proceedings. Collateral estoppel, or issue preclusion, bars relitigation of facts actually litigated in a prior lawsuit between the same parties in a subsequent lawsuit that involves a different cause of action, but some or all of the same facts. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The question of preclusion arises because in two of the three prior chapter 13 cases filed by the debtor, his objections to the claim of the IRS were litigated and found to be without merit. In his first case, the IRS had filed a proof of claim for $28,089.66 for unpaid income taxes for the years 1987, 1990, 1991, and 1992. In that case, the chapter 13 trustee objected to confirmation—in part because the plan did not provide full payment of the IRS priority claim—and confirmation was denied. The debtor then filed an objection to the IRS claim and moved for reconsideration of the order denying confirmation. A hearing was held on July 5, 1994. The court order resulting from that hearing reflects the following:

8. At the hearing on the Motion for Reconsideration the Debtor set forth the grounds for motion, and his objection to claim. The debtor asserts that although he makes sufficient income to require the filing of Federal income tax returns pursuant to Title 26, U.S.C., he does not owe any income tax liability because he is not subject to Federal income taxation.

*In re Shabazz*, No. 94–10304–AB, Findings of Fact, Conclusions of Law and Order at 3 (Bankr.E.D.Va. Aug. 3, 1994) (Tice, J.). With respect to the debtor's objection to the IRS claim, the court concluded:

7. However, the debtor's argument regarding the objection, i.e., that he is not required to pay tax on his earnings, is meritless. See *United States v. Bowers*, 920 F.2d 220, 221 (4th Cir.1990); *Coleman v. Commissioner* 791 F.2d 68, 70 (7th Cir. 1986). This constitutes lack of a meritorious defense....

8. The debtor's filing of an objection to claim of the Internal Revenue Service does not constitute grounds for reconsideration of the denial of confirmation. A presumption of validity is attached to and remains with a proof of claim until the objector introduces evidence sufficient to rebut the prima facie case. *In re Inter–Island Vessel Co.*, 98 B.R. 606, 608 (Bankr.D.Mass. 1988); *In re Harmon*, 72 B.R. 458, 461 (Bankr.E.D.Pa.1987); *In re Americana Apparel*, 55 B.R. 160, 162 (Bankr.E.D.Pa. 1985); *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir.1971). In the case at hand, the Debtor did not offer any worthwhile evidence that his objection to claim was anything other than a tired tax protestor tactic to avoid paying federal income taxes.

*Id.* at 4–5. No appeal was taken from this order, and, as noted, the case was subsequently dismissed.

In the most recent of the debtor's prior chapter 13 filings—his third—the IRS filed a proof of claim in the amount of $54,269.64, for unpaid income taxes for the years 1987, 1990, 1991, 1992, 1993, and 1994. On January 30, 1996, the debtor filed an objection to the IRS proof of claim. The debtor's

grounds of objection to that proof of claim were precisely the same as those asserted in the present objection. At a confirmation hearing held on February 6, 1996, the court heard the debtor's objection to the IRS claim and ruled from the bench that the claim was valid. The United States then filed a motion to dismiss the debtor's case. At the hearing on that motion, the court entered an order denying confirmation and overruling the debtor's objection to the IRS claim. *In re Shabazz*, No. 95–14536, Order (Bankr. E.D.Va., Mar. 26, 1996) (Bostetter, C.J.). A separate order was entered dismissing the debtor's chapter 13 case and awarding sanctions against the debtor under Fed. R.Bankr.P. 9011 for lack of good faith in the filing of the petition. No appeal was taken from either order, but on April 29, 1996, the debtor filed a motion under Fed.R.Bankr.P. 7052 and 9023 for findings of fact and to alter or amend "the Court's Order of March 27, 1996"—presumably, a reference to the two orders signed on March 26, 1996, both of which were entered on the docket the following day. The debtor also filed a motion to enlarge the time for filing an appeal. By orders dated May 21, 1996 and entered on the docket on May 23, 1996, the court denied the motion to enlarge the time for filing an appeal and also denied as untimely the motion to make findings of fact and amend the judgment. The debtor's current chapter 13 petition was filed seven days later.

■■■ If there was ever a case for invoking *res judicata*, this is it. The debtor has filed four successive chapter 13 cases for the sole purpose of objecting to the IRS claim. An objection on the ground that he was not required to pay taxes on his earnings was rejected as frivolous in the first case. Eight days after that case was dismissed, he filed a second case, which was ultimately dismissed after confirmation of an amended plan was denied. One month after his motion for relief from the dismissal order was denied, he filed a third chapter 13 petition. In that case, an objection to the IRS claim essentially identical with the objection in the present

case was heard and resolved adversely to the debtor. That order is final.

Admittedly, there is some conceptual difficulty in applying *res judicata* in the context of claims allowance, since a bankruptcy court has continuing authority to reconsider the allowance or disallowance of a claim "for cause ... according to the equities of the case." § 502(j), Bankruptcy Code; Fed. R.Bankr.P. 3008.[9] As one leading commentator aptly observes, "What constitutes 'cause ... according to the equities of the case' is not entirely clear." 3 Lawrence P. King, Collier on Bankruptcy ¶ 502.10, p. 502–113 (15th ed. 1996). Sufficient cause, the same commentator suggests, "would be the discovery, subsequent to prior allowance, of facts or evidence to support facts that could not have been discovered at an earlier stage, or the discovery of clear errors in the order of allowance." Id. at 502–114. Although there is no time limit for bringing a Rule 3008 motion, when a motion for reconsideration is filed more than ten days after the order allowing or disallowing the claim, "it is properly treated as a motion to vacate pursuant to Fed.R.Civ.P. 60(b), made applicable by Fed.R.Bankr.P. 9024." *United States v. Levoy (In re Levoy)*, 182 B.R. 827, 832 (9th Cir. BAP 1995). In the present case, the debtor has alleged no *facts* whatsoever—let alone new facts not reasonably available at the February 6, 1996, hearing before Chief Judge Bostetter—demonstrating that he has paid his taxes and does not owe the sums claimed by the IRS. His objections are solely that the IRS has not sufficiently, by his lights, proved that he does owe the taxes. Those objections were fully presented to and considered by Chief Judge Bostetter, who determined that they were frivolous. All litigation must come to an end at some time. The fact that the debtor does not like the determination—which was not timely appealed and is now final—made in his prior case does not constitute good cause for relitigating it in this case.

---

9. Rule 3008. Reconsideration of Claims

A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

### III.

Even if *res judicata* were not controlling, the court would nevertheless be compelled to overrule the objection. The debtor has presented no evidence to show that he does not owe the taxes shown on the proof of claim. Indeed, with respect to four of the years—1990 through 1993—the amounts are taken directly from the tax returns he filed. The amounts shown for 1994 and 1995 are admittedly only estimates, since the debtor has not filed returns or provided the IRS with sufficient information to permit an exact calculation, but the estimates are objectively reasonable in light of the debtor's testimony that he earned at least as much in 1994 and 1995 as he did in 1993, the last year for which he filed a return.

The debtor's objection is grounded in various alleged irregularities on the face of the proof of claim. As a result of these irregularities, he argues, the proof of claim does not comply with the Bankruptcy Rules and therefore does not constitute prima facie evidence of the validity and amount of the IRS claim. With respect to the original proof of claim, the court did find merit in one of the debtor's arguments. The original proof of claim failed to comply with the instructions for Official Form 10 ("Proof of Claim") that require the person signing the form to "print the name and title, if any, of the creditor or other person authorized to file this claim." However, an amended proof of claim has now been filed bearing the signature "L Lorello," the printed name "L. Lorello," and the printed title "Bankruptcy Specialist for Chief P & I Unit"—the latter being the abbreviation for the Proceedings & Insolvency Unit.[10] The proof of claim sets forth, as required by the instruction on the form, the debtor's name and case number, the creditor's name and address, the basis for the claim, the date the debt was incurred, and the amount of the claim. Attached to the proof of claim is an itemization of taxes owed by kind and period, including the date of assessment where assessed.

Whatever the formal defects of the original proof of claim, they have been cured by the amended proof of claim. The debtor insists, however, that the proof of claim still does not comply with the Bankruptcy Code and Bankruptcy Rules because (1) it was not signed under oath or penalty of perjury, (2) the person signing did not attach a power of attorney, (3) and official certificates of assessment were not attached to support the claimed assessments. The court does not find any of these arguments to be well taken.

■ First, neither the Bankruptcy Code nor the Bankruptcy Rules requires that a proof of claim be signed under oath or penalty of perjury. *Vines v. IRS (In re Vines),* 200 B.R. 940, 948 (M.D.Fla.1996). Section 501(a), Bankruptcy Code, simply states "A creditor ... may file a proof of claim." Fed. R.Bankr.P. 3001 ("Proof of Claim") prescribes the only formal requirements for a proof of claim:

> (a) Form and Content A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

The relevant official form (Official Form 10) contains a simple signature block, with no language requiring that the form be signed under oath or penalty of perjury. As noted in *Vines, supra,* the former Bankruptcy Act of 1898 "originally contained a requirement that a proof of claim be under oath, but the requirement was deleted in 1960 by Pub.L. No. 86–519." *Id.* Instead, Congress has chosen to protect the integrity of the bankruptcy process by providing in 18 U.S.C. § 157 ("Bankruptcy Fraud") for direct prosecution of a false claim without a threshold requirement that the claim be signed under oath or penalty of perjury:

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or con-

---

**10.** Since a GS–9 Bankruptcy Specialist has delegated authority in his or her own right to sign proofs of claim, the "for" designation is confusing and unnecessary. Because the evidence in this case demonstrates that Ms. Lorello had au-thority to sign the proof of claim, it is not necessary to decide whether an employee who did not have delegated authority could sign a proof of claim "for" an official who did.

cealing such a scheme or artifice or attempting to do so—

\* \* \* \* \* \*

(3) makes a false or fraudulent ... claim ... in relation to a proceeding under title 11, at any time before or after the filing of the petition ...,

shall be fined under this title, imprisoned not more than 5 years, or both.

Official Form 10 contains an explicit warning of the penalties under this statute.

The debtor's argument that the Bankruptcy Rules compel a contrary result is misplaced. The debtor reasons that because Fed.R.Bankr.P. 3001(a) describes a proof of claim as a "statement" and because Fed. R.Bankr.P. 1008 requires that all "petitions, lists, schedules, statements, and amendments thereto" must be verified or signed under penalty of perjury, it follows that a proof of claim must also be verified or signed under penalty of perjury. However, even a cursory reading of Rule 1008 ("Verification of Petitions and Accompanying Papers")—particularly when it is read in conjunction with Rules 1007 and 1009 which flank it—reflects that the "statements" referred to are the statement of financial affairs and statement of intention that the debtor is required to file under Rule 1007. Put simply, Rule 1008 does not address proofs of claim. Finally, there is no merit to the debtor's argument that 26 U.S.C. § 6065—which requires that any document "required to be made under any provision of the internal revenue laws" be verified under penalty of perjury—applies to proofs of claim filed in bankruptcy cases for Federal taxes. The statute, as noted in *Vines, supra,* "is intended to require taxpayers, not the IRS, to make returns under penalties of perjury." *Id.* at 949.

The debtor's next assertion—that the person signing the proof of claim failed to attach a power of attorney—does not require extended discussion. The evidence at the hearing amply demonstrated that Ms. Lorello had actual authority to sign proofs of claim on behalf of the Secretary of the Treasury. That authority was conferred by a regularly published order, not by a power of attorney. For that reason, even assuming a proof of claim signed by an agent or attorney-in-fact would be defective if a copy of the power of attorney were not attached,[11] such requirement would have no applicability in the case of a government employee signing a proof of claim in the exercise of delegated authority.

The debtor also argues that under Fed.R.Bankr.P. 3001(c), the IRS was required to attach to the proof of claim a copy of the certificate of assessment for any tax with respect to which an assessment had been made. This argument was considered and rejected in *Vines, supra,* which observed that Rule 3001(c) is only applicable where the claim is "based on a writing," such as a promissory note, written contract, or judgment. *Id.* As *Vines* explained, "the IRS was not required to attach any documentation to its Proof of Claim because the claim and lien are based not on a writing, but on federal statutes." *Id.*

Finally, the debtor urges that the making of an "estimated" claim for the tax years 1994 and 1995 is improper, because under 26 U.S.C. § 6020(b), the Secretary of the Treasury is required to make and sign a return if the taxpayer fails to do so, and until the Secretary does so, there is no enforceable tax liability. This argument, too, was addressed and rejected in *Vines, supra,* which held that while 26 U.S.C. § 6020(b) "provides the IRS with some recourse if a taxpayer fails to file a return as required under

---

11. There is no express requirement in Fed. R.Bankr.P. 3001 that a power of attorney be attached if a proof of claim is signed by an agent or attorney-in-fact. It is true that Official Form 10, contains the instruction "attach power of attorney, if any." The use of the phrase, "if any," does not require in literal terms that an agent have a power of attorney but only that if a power of attorney exists, it must be attached. The language of Fed.R.Bankr.P. 9010(c) strongly implies that a power of attorney is *not* required in order to sign a proof of claim:

(c) *Power of Attorney.* The authority of any agent, attorney in fact, or proxy to represent a creditor for any purpose *other than the execution and filing of a proof of claim* or the acceptance or rejection of a plan shall be evidenced by a power of attorney conforming substantially to the appropriate Official Form.

(emphasis added).

§ 6012, ... it does not excuse a taxpayer from the filing requirement." *Id.* at 946 (quoting *In re Bergstrom,* 949 F.2d 341, 343 (10th Cir.1991)).

## IV.

This court holds, accordingly, that the IRS amended proof of claim is regular on its face and was executed and filed in accordance with the Federal Rules of Bankruptcy Procedure. For that reason, it constitutes prima facie evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f). The debtor has presented no evidence whatsoever to contradict or rebut, let alone overcome, the prima facie showing made by the proof of claim. In fact, for four of the seven years in question—1990 through 1993—the taxes shown on the proof of claim are taken directly from the tax returns filed by the debtor and verified by him under penalty of perjury. For the two years—1994 and 1995—for which the debtor, without any apparent justification, failed to file returns, the IRS claim is based on the tax that the debtor admitted owing on his 1993 return. The debtor admitted that his income had not declined in either of the two subsequent years, and he offered no evidence (for example, a change in exemptions or deductions, or a credit to which he might be entitled) tending to show that his taxes in 1994 and 1995 would not be at least as much as in 1993. If there is any error in the estimated liability, it is one for which the blame falls solely on the debtor, since it was his obligation to file the returns.

## V.

■ Although not expressly raised as an issue in the objection to the proof of claim, the court has considered—since the issue *was* raised by the debtor's schedules— whether the IRS has correctly characterized the tax liabilities for 1990 through 1995 (including interest but excluding penalties and interest on penalties) as priority claims.[12] The issue of priority is important in chapter 13 since under § 1322(a)(2), Bankruptcy Code, a chapter 13 plan must pay priority

claims in full. General unsecured claims, by contrast, may be compromised under certain circumstances. §§ 1322(b)(2), 1325(a)(3), 1325(a)(4), 1325(b)(1)(B), Bankruptcy Code.

■ Under § 507(a)(8), Bankruptcy Code, priority is accorded to

... allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(I) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]

Put another way, Federal income taxes are *not* entitled to priority status in bankruptcy if (a) the due date of the return was three years or more before the date the bankruptcy petition was filed *and* the tax was assessed more than 240 days prior to the filing of the bankruptcy petition. The debtor's petition in this case was filed on May 30, 1996, and there is no evidence of an extension of the due date for filing a return for any of the years in question. Since the due dates for the 1994 and 1995 taxes (April 17, 1995, and April 15, 1996, respectively) fall within the three-year period prior to the filing of the petition in this case, the taxes for those years are plainly entitled to priority.

With respect to the 1990, 1991, and 1992 tax years, the issue is more complex. A return for the 1990 taxes would have been due on April 15, 1991, for the 1991 taxes on April 15, 1992, and for the 1992 taxes on April 15, 1993. Each of those due dates is

---

**12.** The proof of claim does not assert priority status for the 1987 taxes, the penalties for any of the years, or the interest on the penalties.

more three years prior to the filing of the petition in the debtor's current case, thereby failing to meet the first test of priority status. The court must look, therefore, to when the taxes were assessed. The taxes for 1992 have not yet been assessed. Since they had not been assessed more than 240 days at the time the petition was filed, they are entitled to priority status. The taxes for 1990 were assessed on January 3, 1994, or 878 days prior to the filing of the petition in this case. Similarly, the taxes for 1991 were assessed on December 26, 1994, or 521 days prior to the filing of the chapter 13 petition. Thus the taxes for 1990 and 1991 do not satisfy the test for priority status *unless* the running of the 240 day period was tolled by the debtor's prior chapter 13 filings.

Although there is some disagreement among the courts that have considered the issue, the majority view appears to be that both the three-year and the 240–day periods are suspended during a prior bankruptcy case, when the IRS is barred by the automatic stay from collecting the tax. *Bowling v. IRS (In re Bowling)*, 147 B.R. 383 (Bankr.E.D.Va.1992) (Tice, J.); *Shedd v. United States*, 190 B.R. 692 (Bankr.M.D.Fla. 1996); *In re Taylor*, 81 F.3d 20 (3rd Cir. 1996). As noted above, the debtor has been in chapter 13 more or less continuously since January 27, 1994, with the exception of 8 days between the first and second cases, 33 days between the second and third cases, and 9 days between the third and fourth cases. If the periods the debtor was in chapter 13 prior to the current filing are excluded, the 1990 taxes were assessed only 65 days prior to the current filing and the 1991 taxes only 33 days. Accordingly, those taxes, like the taxes for 1992, 1993, 1994, and 1995, are entitled to priority status.

## VI.

A separate order will be entered overruling the debtor's objection to the amended proof of claim filed by the IRS and allowing the claim as filed, except for the $244.72 overstatement of penalty on the 1987 taxes.