In re Kim GATES, Debtor.

Bankruptcy No. 97–1–2435–DK.

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Nov. 5, 1997.

John L. Dowling, Silver Spring, MD, for Debtor.

Dominiquie V. Sinesi, Local Counsel, William J. Beckett, Delmont, NJ, for Chase Automotive Finance Corp.

### *MEMORANDUM OPINION*

DUNCAN W. KEIR, Bankruptcy Judge.

Debtor requests this court to alter or amend its Order entered August 26, 1997, allowing the secured claim filed by Chase Automotive Finance Corporation ("Chase") in the amount of $8,095.46. The court has reviewed the pleadings and finds that the facts and legal arguments are adequately presented in the materials before it, and that a hearing would not aid the decisional process.

On March 7, 1997, Debtor commenced this case by filing a voluntary petition under Chapter 13 of the United States Bankruptcy Code. A meeting pursuant to 11 U.S.C. § 341(a) was scheduled for April 28, 1997, and a hearing upon confirmation of Debtor's plan was set for May 20, 1997. The bar date for filing proofs of claims was July 28, 1997,

in accordance with Bankruptcy Rule 3002(c). Notice of all of these dates and deadlines were sent to all creditors listed by Debtor in her schedules. As is common in this jurisdiction, the confirmation hearing preceded the bar date for filing proofs of claims by over two months.

At a hearing before this court on May 20, 1997, on confirmation of Debtor's plan, upon the unopposed recommendation of the Chapter 13 Trustee, the plan was confirmed. The plan recites in part:

> (I) —Pay the allowed claim of Chase Automotive Finance, secured by a security interest in a 1991 Mazda Miata, to the extent that such claim is not greater than the value of said automobile, plus interest of 7.5%.

On May 1, 1997, prior to the hearing upon confirmation, Chase filed a proof of claim asserting a secured claim in the amount of $8,095.46. No reference to this claim was made by the Debtor or the trustee at the confirmation hearing. The amount to be paid by the Debtor to the trustee under the plan is insufficient to pay the secured claim as filed.

Subsequent to the Order of Confirmation, Debtor objected to the claim of Chase asserting that the collateral was worth only $4,410.00, based upon the "trade-in value" stated in the Kelly Blue Book. The objection to claim argues that the secured claim should be reduced to the trade-in value asserted, minus post-petition contract payments already made by Debtor, for a net allowed secured claim in the amount of $3,830.74.

Chase responded to the objection to claim asserting that it held a first priority lien upon the 1991 Mazda for an indebtedness in the amount of $8,095.46 (as of the petition date). The response further asserts that under the decision of the United States Supreme Court in *Associates Commercial Corporation v. Rash*, —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the valuation of the collateral should be based upon "replacement value" which Chase asserts should be the "retail" price rather than the trade-in value. Chase asserts that its claim is oversecured and Debtor's plan must pay the full amount of its claim with interest at the contract rate.

At the hearing held upon the objection to claim, Debtor put into evidence a page from the 1997 Kelly Blue Book showing the trade-in value of the subject vehicle to be as asserted by Debtor. Chase put into evidence a page from the National Automobile Dealers' Association Official Used Car Guide ("N.A.D.A.Guide"), Eastern Edition, April 1997, showing the retail value of the subject vehicle to be $9,275.00. Neither party introduced any evidence concerning any rights or items of value included in the N.A.D.A. Guide's determination of retail value that were not afforded to Debtor by the retention of her vehicle.

Upon this record, the court ruled that the value of the collateral exceeded the amount of the claim as of the petition date and that accordingly, the claim was allowed as a secured claim in the full amount of the indebtedness.

Debtor now comes to this court and asks this court to alter or amend its ruling asserting three grounds. First, Debtor asserts that as Chase did not object to confirmation of Debtor's plan, the "cram down provision" contained in the plan binds Chase and accordingly the secured claim "must be reduced to the value of the collateral *as scheduled by the debtor*." Debtor's Motion to Alter or Amend at ¶ 5 (emphasis added).[1] Second, Debtor argues that Chase cannot claim that interest should be paid under the plan upon the allowed claim at the contract rate of 12% instead of the rate proposed by Debtor as the "market rate" of 7.5%. Third, Debtor argues that Chase did not introduce any evidence which would adjust for the "value of items the debtor does not receive when [s]he retains h[er] vehicle"[2] and that it was not "fair" to impose upon Debtor the burden of proving these costs. Debtor argues that as a result of the alleged failure by Chase to

---

1. The underlined words "as scheduled by the debtor" are not contained in the plan.

2. Quoting from *Associates Commercial Corporation v. Rash*, —— U.S. ——, —————— n. 6, 117 S.Ct. 1879, 1886–87 n. 6, 138 L.Ed.2d 148.

introduce such evidence, the court should apply the trade-in or wholesale value for the vehicle.

■■■ Debtor does not specify a rule of procedure under which the Motion for Reconsideration is brought. Because Debtor filed the request for reconsideration within 10 days of the order from which Debtor seeks relief, the court shall treat the motion as a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e).[3] *See In re Investors Florida Aggressive Growth Fund, Ltd.,* 168 B.R. 760, 768 (Bankr.N.D.Fla.1994); *Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.),* 125 B.R. 963, 976–77 (Bankr.N.D.Ill.1990). Although Rule 59(e) does not set forth a standard to be applied when considering a motion to alter or amend, the United States Court of Appeals for the Fourth Circuit has recognized the following three grounds for amending a judgment pursuant to Rule 59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Collison v. International Chemical Workers Union,* 34 F.3d 233, 236 (4th Cir.1994)(quoting *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993)).

■■ Debtor's first assertion that Chase is bound by the provision of the plan relating to its claim because it neglected to object to the confirmation of the plan is erroneous. Debtor argues that in *Associates Commercial Corp. v. Rash,* the Supreme Court ruled that a secured creditor must object to the cramdown provisions of a Chapter 13 debtor's plan in order to protect its claim that it is fully secured. Debtor directs this court's attention to the language in *Rash* which reads:

> If a secured creditor does not accept a debtor's Chapter 13 plan, the debtor has two options for handling allowed secured claims; surrender the collateral to the creditor ... or under the cram down option, keep the collateral over the creditor's objection and provide the creditor, over

the life of the plan, with the equivalent of the present value of the collateral....

*Rash,* —— U.S., at ——, 117 S.Ct., at 1885. This court disagrees with Debtor's interpretation of *Rash* and does not find that the Supreme Court intended said language to overrule case law which holds that the confirmed plan is not binding upon creditors for the purpose of valuing the collateral when those creditors were not notified that an 11 U.S.C. § 506 value determination would be made at the confirmation hearing. *See Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160 (4th Cir.1993).

In *In re Linkous,* the court held that while a bankruptcy court's confirmation order is typically *res judicata,* due process requires that the confirmed plan cannot bind parties to a specific valuation without actual notice that the bankruptcy court would make a Section 506 valuation at the confirmation hearing. *In re Linkous,* 990 F.2d, at 162. The court rejected the debtor's argument that a sophisticated creditor would likely know that its interests were in jeopardy and held that the notice regarding the valuation of the secured claim "must state that such a hearing will be held." *Id.* at 163. *See also In re Rodnok,* 197 B.R. 232 (Bankr.E.D.Va. 1996).

In addition, other courts within this circuit have held that a contest between debtor and creditor regarding the value of a given secured claim should not be heard in the context of confirmation, but rather in a separate adversary proceeding as governed by Federal Rules of Bankruptcy Procedure 3012 and 7001. *See, e.g., Wright v. Commercial Credit Corp.,* 178 B.R. 703, 705–06 (E.D.Va.1995), *appeal dismissed,* 77 F.3d 472 (4th Cir.1996). In *Wright,* the district court held that "when a party asks the bankruptcy court to determine the extent of a lien or the value of the collateral forming the basis of the lien, adversary proceedings are required, as contemplated by Bankruptcy Rule 7001(2) and

---

**3.** Federal Rule of Civil Procedure 59(e) is made applicable to this bankruptcy case by Federal

Rule of Bankruptcy Procedure 9023.

Bankruptcy Rule 3012." *Id.* at 705 (footnote omitted).[4]

Furthermore, in the District of Maryland, the hearing on the confirmation of a Chapter 13 plan often occurs earlier than the deadline for filing claims.[5] The trustee's recommendation and court's findings as to adequate funding of the plan and compliance with 11 U.S.C. § 1325(a)(5)(B)(ii) are often based upon the amounts of claims scheduled by the debtor. If a subsequent proof of a secured or priority claim is timely filed in an amount larger than the plan can distribute, the plan must be adjusted to satisfy the requirements of 11 U.S.C. § 1322(a)(2) and § 1325(a). Often a motion to modify the plan is filed by the debtor or the trustee unless an objection to the filed claim is sustained.

■ Moreover, the facts of this case would not support a finding that the value of Chase's claim had been established by the confirmed Chapter 13 plan. Debtor's plan merely stated that the plan would "pay the allowed claim of Chase Automotive Finance, secured by a security interest in a 1991 Mazda Miata, to the extent that such claim is not greater than the value of the said automobile, plus interest of 7.5%." Thus, the plan itself does not even purport to establish the value which Debtor now argues is controlling.

■ The United States Supreme Court has determined that in a Chapter 13 "cramdown" case, the applicable valuation of collateral under 11 U.S.C. § 506 is "replacement value." *Rash,* —— U.S., at ——, 117 S.Ct., at 1886. The Court defined replacement value

as "the cost the debtor would incur to obtain a like asset for the same 'proposed use.'" *Id.* The Court further provided that a determination of exactly what the replacement value is shall be left to the bankruptcy courts, as triers of fact. *Id.* at —— n. 6, 117 S.Ct. at 1886 n. 6. In a consumer case, replacement value of a motor vehicle used primarily for personal transportation should be calculated by first determining the retail value, as that is the price that a consumer would have to pay to replace the vehicle in the consumer market. Accordingly, in such cases, replacement value equals retail value less the value of items, if any, which were included in the retail value but which were not received by a debtor who retains her vehicle.

In this case, Chase submitted evidence of the retail value of Debtor's automobile consisting of a photocopy of a relevant page from the N.A.D.A. Guide. Debtor did not dispute the accuracy of the N.A.D.A. Guide as to retail value and argued instead that the "trade-in" value as provided in the Kelly Blue Book was the accurate valuation to be used.[6] No evidence was introduced concerning any item included in the retail value set forth in the N.A.D.A. Guide which was not provided to Debtor by the retention of her car. Debtor argues that it is the burden of the creditor to establish such items and as a result of Chase's failure to produce evidence as to such items, the court must apply trade-in or wholesale value.

---

4. Where the issue is the value of the collateral, a formal adversary proceeding is not required. Bankruptcy Rule 3012 states: "The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct." This rule contemplates hearings on issues arising under § 506(a), pursuant to which, "secured claims are to be valued and allowed as secured to the extent of the value of the collateral and unsecured, to the extent it is enforceable, for the excess over such value." *See Wright,* 178 B.R., at 705 n. 3 (quoting Notes of Advisory Committee on Rules, Rule 3012).

Nonetheless, a separate proceeding upon motion (or objection to claim) is required. Such a separate proceeding may be heard concurrently

with the hearing upon confirmation, if the valuation proceeding has been noticed for hearing.

5. In a Chapter 13 case, proofs of claims are required to be filed no later than 90 days after the first date set for the section 341 Meeting of Creditors. Bankruptcy Rule 3002(c).

6. This court follows other courts in recognizing the N.A.D.A. guide and the Kelly Blue Book as credible evidence of valuation. "This [N.A.D.A.] booklet is without question recognized authority as to a general gauge of values in the financial as well as the auto industry relating to automobiles." *In re Thayer,* 98 B.R. 748, 750 (Bankr. W.D.Va.1989). See also *In re Roberts,* 210 B.R. 325, 330 (Bankr.N.D.Iowa 1997); *In re Winston,* 181 B.R. 589, 593 n. 3 (Bankr.N.D.Ala.1995) and cases cited therein.

Debtor's argument is incorrect for two reasons. Even if the claimant was required to produce evidence concerning items included in the retail value but not delivered to the debtor by retention of the vehicle, no basis exists to, in effect, "default" to the wholesale or trade-in value. No legal basis has been argued by Debtor for this proposition. Nor has any factual basis been established by evidence that the wholesale or trade-in value represents replacement value as mandated by the *Rash* decision.

■ The burden of proof with respect to claims filed under 11 U.S.C. § 502 rests initially, and ultimately, with the claimant who "must allege facts sufficient to support their claim." *In re Weidel,* 208 B.R. 848, 854 (Bankr.M.D.N.C.1997) (citation omitted). Nevertheless, "a properly executed proof of claim is sufficient to shift the burden of producing evidence and to entitle the claimant to a share in the distribution of the bankrupt's estate unless an objector comes forward with evidence contradicting the claim." *Superior Metal Moulding Company, Inc. v. Shipp, (In re Friedman),* 436 F.Supp. 234, 237 (D.Md.1977). Although some courts have held that the degree of evidence which must be shown by the objecting party is only "some evidence" contradicting the proof of claim, other courts have stated "the objector must produce evidence equal in force to the prima facie case ... which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Weidel,* 208 B.R., at 854. *See also In re Shabazz,* 206 B.R. 116, 120 (Bankr.E.D.Va.1996), *afford sub nom. Shabazz v. United States,* No. Civ.A. 97–185–A, 1997 WL 593863 (E.D.Va. June 9, 1997).

■ In practical application, a proof of claim establishes prima facie, the elements of a cause of action against the debtor for the claim asserted. To overcome the prima facie validity, the objecting party must demonstrate by evidence, a defense to one or more elements of the cause of action asserted in the claim, which defense, if uncontravened, would be sufficient to defeat the legal basis for the claim asserted. "If the objecting party produces such evidence, the burden of going forward reverts to the claimant to

prove the validity of its claim by a preponderance of the evidence." *Weidel,* 208 B.R., at 854.

■ In this case, the proof of claim alleged that Chase held a claim in the amount of $8,095.46 on the date of the petition upon the basis of an automotive loan secured in the same amount by a perfected security interest in a motor vehicle described as a 1991 Mazda, Vehicle Identification Number: JM1NA3513M0230448. The proof of claim, having been executed and filed in accordance with the bankruptcy rules, constituted prima facie evidence of the validity and amount of the claim. Bankruptcy Rule 3001(f); *Internal Revenue Service v. Levy, (In re Landbank Equity Corp.),* 973 F.2d 265 (4th Cir. 1992). Debtor's objection attacked the value of the collateral asserted in the proof of claim. If the objection was supported by evidence demonstrating that the value was less than the amount claimed, the objection would be sufficient to overcome the prima facie validity of the proof of claim on that issue.

However, Debtor failed to support her allegation of lower value with evidence. Debtor might have accomplished this by producing evidence showing that the value established by Chase was inaccurate (for example, evidence that the car was not of the condition assumed in the price guide, or that another credible source placed a lower value on such vehicles). Nor did Debtor offer any evidence that there were items which should be deleted from retail value in arriving at replacement value. Where the proof of claim established prima facie the fully secured claim of the creditor, evidence of facts contravening the secured amount of the claim, such as items which were included in the retail value but not received by the debtor, must be produced by the objecting party which alleges a lower replacement value.

In this case, Debtor solely argued (without legal basis) that trade-in value must be applied. Therefore, Debtor did not overcome the prima facie validity of Chase's secured claim, particularly as further supported by Chase's proof of retail value. If Debtor had introduced evidence contravening the ele-

ment of value in Chase's proof of claim, the burden of proving by a preponderance of the evidence the replacement value of the car would have been ultimately upon Chase. But that did not happen in this case.

For these reasons, Debtor's motion to reconsider the court's Order entered August 26, 1997, is denied. Chase's claim is allowed as a secured claim in the amount of $8,095.46.

Finally, Debtor argues that the 7.5% interest rate proposed in the confirmed plan of reorganization should be applied to the balance of the loan instead of the contract rate of 12%. This is not an issue in determining the claim, but pertains to the confirmability of the plan.[7]

In order for the value distributed over the term of the plan on account of a secured claim to equal the present value of the claim on the effective date, the amount distributed must include interest at a discount rate sufficient to yield the required present value. *See United Carolina Bank v. Hall,* 993 F.2d 1126 (4th Cir.1993). As Debtor's current plan is insufficient to pay the amount of the allowed secured claim, it requires modification or the case will be subject to dismissal. The issue of what is the proper discount rate shall be addressed at a hearing upon a motion to modify plan (if filed).

---

**7.** 11 U.S.C. § 1325(a) provides in part:

> [T]he court shall confirm a plan if—
> (5) with respect to each allowed secured claim provided for by the plan—
> (A) the holder of such claim has accepted the plan;

(B) (I) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.