In re David WILSON and Carole Wilson, Debtors.

No. 99–02234.

United States Bankruptcy Court, District of Columbia.

Dec. 6, 2001.

Wendelin I. Lipp, Paley, Rothman, Goldstein, Bethesda, MD, for debtor.

Charles Barbera, Washington, DC, for creditor.

### DECISION RE TRUSTEE'S SECOND MOTION TO MODIFY CONFIRMATION ORDER

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The Chapter 13 trustee's Second Motion to Modify Confirmation Order of February 15, 2000, Post–Confirmation (the "Motion") (Docket Entry "D.E." No. 58, filed August 31, 2001) will be denied for the following reasons. The trustee commenced plan payments to general unsecured creditors prior to the expiration of the governmental claims bar date (because the debtors' schedules reflected governmental claims in amounts that were sufficiently small to permit her to make such distributions without falling short of having on hand amounts necessary to pay the governmental claims once filed). Because of the subsequent filing of unexpectedly large governmental claims entitled to payment under the plan, the trustee seeks to increase plan payments in order to assure that sufficient funds are received to pay allowed secured and priority claims in full, and to bring the pro rata distribution paid on governmental entities' general unsecured claims to the same percentage as already paid on non-governmental entities' general unsecured claims. The trustee's appropriate remedy is to recover the excess payments made to holders of non-governmental allowed general unsecured claims, not to amend the plan.

I

The debtors filed a voluntary petition in Chapter 13 on November 2, 1999. The debtors' schedules, filed with their petition, listed secured debts totaling $608,382.51, priority debts (unsecured claims entitled to

priority under 11 U.S.C. § 507(a)) totaling $101,432.07, and general unsecured debts (unsecured claims not entitled to priority under 11 U.S.C. § 507(a)) totaling $205,157.51. On January 31, 2000, the debtors removed by praecipe (D.E. No. 14) a $60,000.00 general unsecured claim from the schedules as the unsecured claim was duplicative of an unsecured priority claim also listed, thereby reducing the debtors' scheduled general unsecured debt to $145,157.51. The debtors' amended Chapter 13 plan (D.E. No. 10, filed January 12, 2000) that was confirmed by the court's Order Confirming Amended Plan Filed January 12, 2000 (D.E. No. 15, entered February 15, 2000) provided for payments to be made by the debtors to the trustee of $4,425.00 per month for fifty-nine months, for a total payment of $261,075.00. From a total funding of $261,075.00, the debtors' confirmed Chapter 13 plan provided for full payment (with seven-percent per annum post-confirmation interest) of allowed secured claims (other than ones of no relevance here) and of priority claims (unsecured claims entitled to priority under 11 U.S.C. § 507(a)), but for payment of general unsecured debts (unsecured claims not entitled to priority under 11 U.S.C. § 507(a)) at a "variable rate," meaning that the payments on these claims would vary according to what was left after payment of those claims that were to be paid in full.

At the time of confirmation, neither the non-governmental claims bar date of March 19, 2000, nor the governmental claims bar date of May 1, 2000, had passed. By the non-governmental claims bar date, secured claims totaling $246,133.05 (including a $245,460.68 first deed of trust on the debtors' residence and $672.37 in other secured claims) and general unsecured claims totaling $125,043.39 had been filed. By the governmental claims bar date, additional secured claims totaling $149,718.83, priority claims totaling $82,447.59, and general unsecured claims totaling $134,091.65 had been filed.[1] A total of $395,851.88 in secured claims, $82,447.59 in priority claims, and $259,135.04 in general unsecured claims were filed in the debtors' case.

Subsequent to the non-governmental claims bar date, the trustee objected to $1,691.45 of general unsecured claims and $672.37 of secured claims. The trustee's objections were sustained by orders entered April 3, 2000. Accordingly, the allowed claims in the debtors' case were secured claims totaling $395,179.51, priority claims totaling $82,447.59, and general unsecured claims totaling $257,443.59.

The only secured debt to be paid through the debtors' Chapter 13 plan is that of the Internal Revenue Service ("IRS") in the amount of $149,718.83.[2]

---

1. On June 22, 2000, the District of Columbia Office of Tax and Revenue filed a proof of claim asserting a secured claim of $62,252.22. The debtors had previously filed a proof of claim on behalf of the District of Columbia asserting a priority claim of $50,423.02 and a general unsecured claim of $16,774.82. By letter dated June 19, 2001 (D.E. No. 57) the District of Columbia withdrew its proof of claim. Accordingly, the District of Columbia is entitled to receive distributions on account of its claims as asserted in the proof of claim filed by the debtors.

2. In addition to the secured debts for which claims were filed, claims were not filed on behalf of holders of $110,360.64 of scheduled secured debt arising from a second deed of trust secured by the debtors' residence, a loan secured by the debtors' automobile, and withdrawals from the debtors' retirement accounts. However, for purposes of ruling on the trustee's Motion, these debts, along with the secured claim in the amount of $245,460.68 filed by the holder of the first deed of trust on the debtors' residence are irrelevant as the debtors are treating all of

Thus, the Chapter 13 plan provided for full payment of secured claims of $149,718.83,[3] full payment of priority claims of $32,024.57, and a variable rate payment on general unsecured claims which total $240,668.77.

After confirmation of the debtors' Chapter 13 plan, but prior to governmental claims bar date, the trustee began making distributions on filed claims, including general unsecured claims. The trustee relied on the amounts of the debts listed in the debtors' schedules in determining that funds to be paid under the plan were sufficient to permit a distribution to general unsecured creditors. After the passage of the governmental claims bar date, it became apparent to the trustee that her initial determination was in error: the balance of the funds to be paid by the debtors into the Chapter 13 plan would be insufficient, given the payments already made on general unsecured claims, to pay the secured claim of the IRS in full with interest, to pay the priority claims in full, and to pay the IRS and District of Columbia a percentage of their general unsecured claims equal to that percentage already paid on the other general unsecured claims.

## II

By the Motion, the trustee seeks to increase the debtors' plan payment:

> to provide for sufficient funding to pay all properly filed priority and secured claims in full with requisite post-confirmation interest per annum and to pro-

vide for the pro-rata distribution of approximately 23% to all general unsecured claims based primarily on the filing of priority tax claims in the total amount of $82,447.59 and secured tax claims in the total amount of $149,718.83, substantially greater than scheduled by the debtors.

The debtors' objection to the Motion asserts that the plan, as originally confirmed, provided "sufficient funding to pay all secured tax claims with interest [and] all priority claims required by the Bankruptcy Code." Further the debtors assert that the need for additional funding to pay all priority and secured claims in full with interest and to provide a pro-rata distribution of twenty-three percent to all general unsecured creditors arose solely from the trustee's actions in beginning to make distributions to unsecured creditors prior to ascertaining the full extent of the tax claims to be filed in the case. The debtors argue that they should not be required to pay more money into the plan to provide all unsecured creditors a pro-rata distribution of twenty-three percent when no such set distribution was to provided for in the plan. Rather, the plan, as noticed to creditors, provided only that "ALL UNSECURED CREDITORS SHALL BE PAID VARIABLE RATE."

The trustee, in response, asserts that the distributions already made were appropriately made based on the amounts of the debts listed in the debtors' schedules. Additionally, the trustee argues that she is directed by 11 U.S.C. § 1326(a)(2),[4] Sec-

---

these debts as secured debts to be paid outside of the confirmed Chapter 13 plan.

**3.** As a secured creditor being paid through the Chapter 13 plan, the IRS is entitled to receive seven-percent interest per annum pursuant to the terms of such plan.

**4.** 11 U.S.C. § 1326(a)(2) provides, in relevant part:

> A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable.

tion (D) of Chapter 6 of the *Handbook for Chapter 13 Standing Trustees* [5] promulgated by the Executive Office for United States Trustees, and F.R. Bankr.P. 3021 [6] to make distributions to creditors "as soon as practicable" after confirmation, and that in order to do so, she has no alternative other than to rely upon the schedules filed in the case. Accordingly, the trustee lays the burden of providing additional funds upon the debtors, as their schedules inaccurately understated the amounts of the secured, priority, and general unsecured governmental claims.

### III

The shortfall of funds necessary to administer the debtors' case, which the Chapter 13 trustee seeks to overcome by a modification of the debtors' plan, arose from: (i) the court's practice of confirming Chapter 13 plans prior to the expiration of the claims bar date; (ii) the chapter 13 trustee's duty to begin making distributions to creditors "as soon as practicable" after confirmation; (iii) the debtors' filing of schedules that understated the amounts of the IRS' and District of Columbia's claims; and (iv) the fact that the IRS and District of Columbia waited until after the debtors' plan was confirmed and the trustee began making distributions to file their respective proofs of claim. The questions thus becomes which of the parties that contributed to the shortfall should bear the burden of resolving it.

### A. *"Early Confirmation."*

■ Similar to this court, a number of courts, commonly said to engage in "early confirmation," confirm Chapter 13 plans before the expiration of the claims bar date.[7] In his treatise on Chapter 13,

---

**5.** Section (D) of Chapter 6 of the *Handbook for Chapter 13 Standing Trustees* provides:

> Section 1326(a)(2) states that "[i]f a plan is confirmed, the standing trustee shall distribute any such payment in accordance with the plan as soon as practicable." See also FRBP 3021. The standing trustee should put in place procedures designed to assure that disbursements to creditors are made soon after confirmation and to monitor the progress of cases to assure that cases move forward.

Executive Office for United States Trustees, *Handbook for Chapter 13 Standing Trustees*, Chapter 6, Section (D), at 6–6 (December 1, 1998) *available at www.us.doj.gov/ust/library/Chapter13/ch13–98hb.pdf.*

**6.** F.R. Bankr.P. 3021 provides, in relevant part:

> Except as provided in Rule 3020(e), after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed . . .

**7.** *See In re Pedersen,* 229 B.R. 445, 452 (Bankr.E.D.Cal.1999) ("[T]he courts of the Eastern District of California confirm plans before the bar date expires. To wait until after the claims' bar dates would flout the Congressional directive that payments in accordance with the plan begin 'as soon as practicable.' "); *Simmons v. Ford Motor Credit Co. (In re Simmons),* 224 B.R. 879, 883 (Bankr.N.D.Ill.1998) ("Historically, in this district, Chapter 13 confirmation hearings are held prior to the expiration of the claims bar date under Bankruptcy Rule 3002."); *In re Turpen,* 218 B.R. 908, 911 (Bankr.N.D.Iowa 1998) ("When as in this district, a confirmation hearing is held prior to a claims deadline, the filing of a claim is not required for a creditor to object to a Chapter 13 plan."); *In re Gates,* 214 B.R. 467, 471 (Bankr.D.Md. 1997) ("[I]n the District of Maryland, the hearing on the confirmation of a Chapter 13 plan often occurs earlier than the deadline for filing claims."); *Dixon v. United States (In re Dixon),* 210 B.R. 610, 616 (Bankr.W.D.Okla. 1997) ("In this district, the confirmation process is allowed to proceed prior to the claims bar date."); *In re Macias,* 195 B.R. 659, 661 (Bankr.W.D.Tex.1996) ("This division of the Western District of Texas (as well as the San Antonio Division) uses 'early confirmation,' a procedure by which plans are confirmed well before the bar date for claims."); *In re Grogan,* 158 B.R. 197, 200 (Bankr.E.D.Cal.1993) ("It is common practice for courts to approve reorganization plans prior to the claims bar

Judge Lundin summarized the advantages of "early confirmation":

> When cases move quickly to confirmation, money moves quickly from the debtor to the trustee and then to creditors; debtors complete their plans more quickly, the cases that aren't going to succeed fail more quickly; and creditors either get paid or are returned to their nonbankruptcy remedies.

Keith M. Lundin, *Chapter 13 Bankruptcy* § 216.1 (3d ed.2000) (footnotes omitted).

In order to confirm a Chapter 13 plan prior to the expiration of the claims bar date, both the court and the Chapter 13 trustee must rely upon the amounts of claims scheduled by a debtor in determining the plan's compliance with 11 U.S.C. § 1325(a)(4) and (a)(5)(B)(ii). *See In re Gates,* 214 B.R. at 471 ("[T]rustee's recommendation and court's findings as to adequate funding of the plan ... are often based upon the amounts of claims scheduled by the debtor."). In the instant case, both the trustee and the court relied upon the scheduled amounts of the IRS' and District of Columbia's claims in determining whether confirmation of the debtors' plan was appropriate. It was only the post-confirmation actions of the trustee taken in reliance on the debtors' inaccurate schedules that resulted in distributions being made in error. Accordingly, it can only be said that the distributions in error resulted from the "early confirmation" if § 1326(a)(2) is read to have required the trustee to make distributions based on the debtors' schedules despite the risk that the amounts of the proofs of claim might be greater than those listed in the debtors' schedules.

**B.** *Trustee's Duty to Make Distributions "as soon as practicable" After Confirmation.*

■■■ Section 1326(a)(2) did not require the trustee to make distributions prior to the expiration of the claims bar date based on the debtors' schedules. Section 1326(a)(2), Section (D) of Chapter 6 of the *Handbook for Chapter 13 Standing Trustees,* and F.R. Bankr.P. 3021 provide no guidance in determining what is meant by "as soon as practicable." However, the legislative history of § 1326(a)(2) provides some guidance. Specifically, the legislative history of the 1994 amendment to § 1326(a)(2), which added the phrase "as soon as practicable," states:

> Currently, the practice of making payouts under a Chapter 13 plan varies from one court to another. This section clarifies Congressional intent that the trustee should commence making the payments 'as soon as practicable' after the confirmation of the Chapter 13 plan. Such payments should be made even prior to the bar date for filing claims, **but only if the trustee can provide adequate assurance against any prejudice to later filing claimants caused by distributions prior to the bar date.**

140 Cong. Rec. H10,770 (daily ed. Oct. 4, 1994) (statement of Rep. Brooks) (emphasis added).

From the legislative history, it appears that Congress intended "as soon as practicable" to mean such time as the trustee is able to determine that distributions to claimants having filed proofs of claim will not result in prejudice to other creditors

---

date."); *In re Minick,* 63 B.R. 440, 442 (Bankr.D.D.C.1986) (Basson, J.) ("Bankruptcy courts nationwide routinely confirm Chapter 13 plans without awaiting judicial resolution of all claims. Indeed, in most Chapter

13 cases, the time for creditors even to file their claims under Bankruptcy Rule 3002(c) does not expire until some two months after the date normally set for the confirmation hearing.").

that later file claims.[8] If the Chapter 13 trustee is unable to do so based on the information available at the time, the trustee must defer making distributions until such time as sufficient information is available to make such determination. In some cases, the trustee may be required to await the expiration of the claims bar date. In the instant case, the trustee, in an exercise of her judgment, determined, based only on the debtors' schedules, that distributions could be made to the general unsecured creditors prior to the filing of the IRS' and District of Columbia's proofs of claim. The trustee's determination was in error.

Unlike the typical Chapter 13 case, in which a secured, priority or mortgage arrearage claim is asserted which the trustee can begin to pay immediately after confirmation (because a proof of claim stating the claim has been filed), in the instant case, there were no non-governmental secured claims, non-governmental priority claims, or mortgage arrearage claims to be paid through the plan.[9] Accordingly, no proof of claim stating a secured, priority, or mortgage arrearage claim to be paid through the plan had been filed at the time of confirmation. The trustee therefore had the option (i) to rely on the debtors'

schedules to determine that the claims of the IRS and District of Columbia would not be prejudiced by the making of distributions to the general unsecured creditors, or (ii) not to rely on the debtors' schedules, and await the filing of the IRS' and District of Columbia's proofs of claim, before making any distributions. In choosing to make distributions on non-governmental general unsecured claims, the trustee assumed the risk that the secured and priority claims of the IRS and District of Columbia could be, as ultimately was the case, so large as to render the distributions on the non-governmental general unsecured claims prejudicial to the secured and priority claims to be paid through the plan. Because the distributions have resulted in prejudice to the IRS and District of Columbia, it is clear that the trustee began making distributions prior to it being "practicable" to do so in contravention of § 1326(a)(2). Accordingly, it is appropriate to place the onus of resolving the shortfall of funds necessary to administer the debtors' case upon the trustee.

*C. Debtors' Inaccurate Schedules.*

 While the debtors' schedules were inaccurate, the schedules were not so inaccurate as to make the court's determination under § 1325 and the trust-

---

8. Just as earlier filed claims should not be paid to the prejudice of later filed claims, late-filed claims are disallowed to prevent prejudice to timely filed claim holders by preventing late-filed claims from unfairly reducing the distribution to those claim holders who timely filed. *See In re Tucker,* 174 B.R. 732, 743 (Bankr.N.D.Ill.1994). However, an amendment to a proof of claim that reduces the distribution to unsecured creditors would not necessarily be disallowed. *In re Dietz,* 136 B.R. 459, 468–69 (Bankr. E.D.Mich.1992) ("Thus, the fact that other creditors in this case will receive a smaller distribution than they would receive if [the amending creditor's] claim were not allowed does not establish the kind of 'prejudice' which would preclude amendment. Rather the type of prejudice which would bar a

creditor from amending its proof of claim typically involves an irrevocable change in position or some other detrimental reliance on the status quo.") (footnote and citations omitted).

9. Because of the exceptional nature of this case, the court's ruling, expressed herein, will have little impact upon the trustee's administration of the vast majority of her cases. As noted, it is only in the rare case in which there are no non-governmental secured claims, non-governmental priority claims, or mortgage arrearage claims to be paid through the plan that distributions to general unsecured creditors would occur prior to the filing of governmental proofs of claim.

ee's recommendation of confirmation likewise inaccurate. Rather, the debtors' schedules were only so inaccurate as to make the trustee's projection of the amount to be paid on unsecured claims inaccurate. Had the trustee not made distributions on the general unsecured claims prior to the governmental claims bar date, the debtors' plan could have been successfully administered pursuant to its terms while yielding a smaller than originally expected return on the general unsecured claims. This continued feasibility results from the plan providing for a variable, rather than fixed or percentage, distribution on general unsecured claims. Because the debtors' plan continues to be feasible and also continues to satisfy the other requirements of § 1325, the court does not deem it appropriate to require the debtors to modify their plan to require the payment of additional monies to allow the secured and priority creditors to be paid in full (with interest, if provided) and to pay a dividend of twenty-three percent on general unsecured claims.

### D. Post-confirmation Filing of the IRS' and District of Columbia's Proofs of Claim.

■ Although the IRS and District of Columbia filed their respective proofs of claim prior to the expiration of the governmental claims bar date, by delaying filing until after confirmation and the making of distributions by the trustee, the IRS and District of Columbia contributed to the likelihood that the payment of their respective claims could be prejudiced by the trustee's distribution of monies to general unsecured creditors. See Lundin, *Chapter 13 Bankruptcy* § 216.1 (3d ed.2000) ("The only danger of prejudice during the early months after confirmation is that money intended for secured and priority claim holders will be distributed to unsecured claim holders because not all priority and secured claim holders have filed proofs of claim .... The potential for prejudice would evaporate if claims holders would protect themselves by quickly filing proofs of claim in all Chapter 13 cases."). Generally, distributions in error that would prejudice secured and priority creditors can be avoided by the Chapter 13 trustee accumulating funds to be paid to such creditors upon the filing of proofs of claim. *See id.* In the instant case, the trustee attempted to do just that but erred by accumulating too little money due to the distributions made to the general unsecured creditors.

While the IRS' and District of Columbia's delay in filing their proofs of claim contributed to the shortfall of funds necessary to administer the debtors' case, it is not appropriate to penalize the IRS and District of Columbia for waiting to file their proofs of claim. The IRS' and District of Columbia's delay in filing their proofs of claim was not the proximate cause of their claims being prejudiced. Instead, it was the trustee's reliance on the debtors' inaccurate schedules in determining whether to make distributions to the general unsecured creditors that caused insufficient monies to be accumulated to pay the IRS' and District of Columbia's claims.

### IV

■ For the foregoing reasons, it would be appropriate, on motion of an affected creditor, to consider requiring the trustee to reimburse the estate unless she recovers, pursuant to an implicit right recognized by 11 U.S.C. § 502(j),[10] all distributions made in error by the trustee. *See In re Crotts*, 87 B.R. 418 (Bankr.E.D.Va. 1988) ("The courts have additionally found that in cases where distributions have been

---

10. 11 U.S.C. § 502(j) provides:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsid-

made in error or improperly the court can require the recovery of all distributions necessary to correct the error."); *In re Kelderman,* 75 B.R. 69, 71 (Bankr. S.D.Iowa 1987) (requiring trustee to initiate adversary proceeding to recover excess dividends paid to creditors); *see also In re Madden,* 388 F.Supp. 47, 50–51 (D.Idaho 1975) ("[T]he bankruptcy court, by summary proceeding, can order that a dividend previously paid be returned . . . ."); *but see Vick v. Fed. Land Bank of Baltimore (In re Vick),* 75 B.R. 248 (Bankr. E.D.Va.1987) (trustee equitably estopped from recovering excess distribution from creditor who had accepted the overpayment in good faith and relied to its detriment thereon). An order to such effect follows.

ered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is of the same class as such holder's claim, such holder may not receive any additional payment on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. **This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.**
[Emphasis added.]