**In re Darcy Alana HERRON, Debtor.**

**No. 06–15285–RAG.**

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

Jan. 23, 2008.

———

Imad K. Dajani, Baltimore, MD, for Debtor.

Ellen W. Cosby, Baltimore, MD, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO RECONSIDER ORDER OVERRULING OBJECTION TO PROOF OF CLAIM

ROBERT A. GORDON, Bankruptcy Judge.

Before the Court for consideration at a hearing held on August 29, 2007 was Debtor's Motion for Reconsideration or to Amend or Alter Judgment Denying Debtor's Objection to Jefferson Capital System (sic) Proof of Claim (Motion to Reconsider) filed on August 10, 2007. Dkt. No. 63. For the reasons stated on the record at the conclusion of the hearing, as outlined in detail below, the Court will deny the Debtor's Motion.

### Factual Statement

On October 3, 2006, Jefferson Capital Systems, LLC (JCS) filed Proof of Claim number 6 (JCS Claim), asserting a general unsecured claim in the amount of $6,605.88. The JCS Claim states that it is based upon a credit card debt incurred on August 19, 2006[1]. The Debtor listed this debt on her Schedule F, Creditors Holding Unsecured Nonpriority Claims, in almost the exact amount as the JCS Claim[2]. Debtor did not assert that the debt was in dispute or otherwise non-payable.

An Account Statement Summary (Summary) dated October 2, 2006, is attached to the JCS Claim in support thereof. The Summary indicates Debtor's account was opened on December 29, 1999 and that $1,392.48 in accrued interest was charged-off on April 8, 2005 from a total debt of $7,998.36, leaving a balance of $6,605.88. That amount is stated on the face of the JCS Claim as the total amount due. However, the Summary also indicates that the debt was "incurred" on August 19, 2006. Obviously, there is a measure of internal inconsistency in the information included in the Summary.

Debtor filed her original objection to claim on November 10, 2006. Dkt. No. 19. Debtor filed an amended objection on November 13, 2006 to include the notice provision required by the Local Bankruptcy Rules. Dkt. No. 22. The Court overruled the amended objection on December 22, 2006 for inadequacy of service.

On December 26, 2006, Debtor filed her second amended Objection to Claim (Objection). Dkt. No. 39. Debtor asserted that the claim is unenforceable under the general 3–year statute of limitations imposed by Maryland law[3], relying entirely upon the date the account was opened (December 29, 1999) and the date it was charged-off (April 8, 2005) as represented in the Summary. Service of the Objection was proper and in accordance with both

---

1. Although JCS purports to be the current holder of claim, the JCS Claim does note that the debt originated with Aspire Visa and that JCS purchased it from Midland Credit Management, Inc.

2. Debtor identified "Midland Credit/Aspire" as the claim holder.

3. See Md.Code Ann., Cts. & Jud. Proc. § 5–101 which provides that:

 A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

the Bankruptcy and Local Rules. JCS has not filed a response to the Objection.

A hearing on the Objection was held on July 30, 2007. Counsel for the Debtor appeared but the Debtor did not. No witnesses were called nor was any other evidence presented in support of the Objection. Instead, Counsel relied entirely upon the averments identified above. In response, the Court noted that while certain dates and corresponding references included in the Summary could be interpreted to inferentially support Debtor's contention, without a precise explanation grounded in admissible evidence as to when and why the limitations period had expired it was impossible to conclude with certainty that Debtor's objection should be sustained. This was especially true in light of Debtor's sworn acknowledgment of the validity and amount of the claim included in her Schedule F. In light of the absence of any proof as to when Debtor's final charge was recorded on the account and, moreover, the Summary's representation that the debt was incurred on August 19, 2006, the Court could not find that it was more likely than not that the claim was barred by limitations. Hence, the written Objection alone did not satisfy Debtor's burden and it was overruled without prejudice. Dkt. No. 59. The Court noted that if Debtor wished to successfully prosecute the Objection, evidence sufficient to explain why the claim was barred by limitations would be required. It was suggested that Counsel could either submit Debtor's affidavit, or, a second hearing could be scheduled for Debtor to attend and testify.

Rejecting both options, Counsel instead filed the instant Motion to Reconsider outlining what are asserted to be the infirmi-

ties of the Court's oral ruling. Debtor first challenges the sufficiency of the Summary, arguing that it constitutes hearsay and does not qualify as supporting documentation as required by Fed. R. Bankr.P. 3001(c) and (f). Debtor then asserts that since JCS, which retains the ultimate burden of proof, has defaulted by not responding to the Objection, requiring Debtor to submit evidence is unfair and violative of her substantive and procedural due process rights.

The Court held a hearing on the Motion to Reconsider on August 29, 2007. Counsel for Debtor appeared, again without his client, and vigorously argued the points made in the Motion. The Court reiterated that it could not rule in Debtor's favor based solely on the written, unsworn averments of the Objection, as some of the information contained in the Summary contradicted the Objection's proffers. Moreover, the Summary did not include a definitive representation sufficient to support a factual conclusion that the limitations period had expired. The Court denied the Motion to Reconsider, reaffirming its ruling from the previous hearing.

### Legal Analysis

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334 and Local Rule 402 of the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue of this Contested Matter is proper in this district and division pursuant to 28 U.S.C. § 1408.

■ 11 U.S.C. § 502(a)[4] governs the allowance of claims. The careful reader will note that the statute provides that a proof of claim is deemed allowed unless a party

---

**4.** Hereafter, all statutory citations are to the Bankruptcy Code, found at Title 11 of the United States Code, unless otherwise noted.

in interest objects [5]. Section 502(b) then lists the nine exclusive grounds available to properly underpin an objection to a proof of claim. See *In re Heath*, 331 B.R. 424, 435 (9th Cir. BAP 2005) (holding that Section 502(b) establishes the grounds for disallowance of a claim and non-compliance with Bankruptcy Rules, including Rule 3001(c), is not one of the statutory grounds), *In re Campbell*, 336 B.R. 430, 435–436 (9th Cir. BAP 2005) (same), *In re Dove–Nation*, 318 B.R. 147, 151 (8th Cir. BAP 2004) (same), *In re Kirkland*, 379 B.R. 341, 344 (10th Cir. BAP 2007) (adopting the exclusive view of Section 502(b), citing to *Heath* and *Dove–Nation*). In this instance, although Debtor does not specify which of the nine grounds she relies upon, she does assert that the claim is barred by the general statute of limitations imposed by state law. That would seem to fall under Section 502(b)(1) [6].

■ Although the Bankruptcy Code governs the allowability of claims, the Bankruptcy Rules dictate the manner and timing of the filing of claims and objections thereto. See Fed. R. Bankr.P. 3001–3008. Under Rule 3001(c), when a claim is based on a writing, the supporting writing is to be filed with the claim. A claim properly executed and filed constitutes "prima facie evidence" of the claim's validity and amount pursuant to Rule 3001(f). Thus, in this District, it is settled that a "properly executed proof of claim is sufficient to shift the burden of producing evidence and to

entitle the claimant to a share in the distribution of the bankrupt's estate unless an objector comes forward with evidence contradicting the claim." *In re Gates*, 214 B.R. 467, 472 (Bankr.D.Md.1997), citing to *Superior Metal Moulding Company, Inc. v. Shipp (In re Friedman)*, 436 F.Supp. 234, 237 (D.Md.1977).

■ *Gates, supra*, provides an excellent description of the step-by-step process that must be followed in order for a Debtor to properly assert, and then prevail upon, an objection to claim. To overcome the *prima facie* validity of the proof of claim, the debtor "must submit **by evidence**, a defense to one or more elements of the cause of action asserted in the claim." *Id.* at 472 (emphasis supplied). Once the debtor satisfies that standard, the burden of going forward shifts to the party bearing the burden of persuasion under the underlying, substantive, non-bankruptcy law. *Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 26, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (bankruptcy proceeding does not alter the burden of proof on tax claim in bankruptcy court when the substantive law creating the tax obligation puts the burden on the taxpayer-debtor).

■ In the instant case, the disputed claim is based upon the repayment obligation under a contract. Therefore, the claimant retains the ultimate burden of proof under state law. In such a case, when the debtor provides evidence sup-

---

5. Section 502(a) provides that:
 (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

6. Section 502(b)(1) provides that:
 (b) Except as provided in subsections (e)(2), (f), (g), (h) and (I) of this section, if such objection to a claim is made, the court,

after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

porting an objection to claim, the burden reverts to the creditor to prove the validity of its claim by a preponderance of the evidence. *Gates*, 214 B.R. at 472. Thus, the burden of proof rests "initially, and ultimately, with the claimant who must allege facts sufficient to support their claim," if the debtor successfully rebuts the presumption of validity. *Id.*

In *Gates, supra*, the creditor's proof of claim was sufficient to be afforded *prima facie* validity. Hence, the objecting debtor was required to offer evidence on the discrete issue raised by her: whether the value of the vehicle collateral owned by her should be measured by "trade-in" (as opposed to "replacement") value. Because she failed to do so, it was held that she could not simply rely upon the fact that the creditor failed to submit such evidence at the hearing. This result is correct because the objector must first provide an evidentiary basis that rebuts a proper claim's *prima facie* validity.

 The JCS Claim was properly executed and filed and was accompanied by the Summary. It therefore constitutes *prima facie* evidence of the claim's validity and amount. Since the "writing" that underlies credit card accounts—potentially including the credit agreement, electronic records, and monthly bills—can often be voluminous, creditors can comply with Rule 3001 by attaching an account summary to the proof of claim [7]. There appears to be no uniform standard as to the requisite comprehensiveness of such summary. However, both common sense and logic dictate that it should, at a minimum, include some breakdown of interest and other charges. *Heath*, 331 B.R. at 432–433.

In *Heath*, the court did not provide a definitive answer as to whether the necessary summary should cover either the entire account history, only the last several months, or only the charges not included in the last pre-petition statement. *Id.* at 433. Likewise, this Court concludes it would be counterproductive to set out a specific checklist of data that must be uniformly supplied in summary form for credit card account claims. Indeed, the information that must be provided may vary from case to case. Nevertheless, the Court can conclude that the JCS Claim, with the attached Summary, does meet at least the minimum standard imposed by Bankruptcy Rule 3001 and the case law interpreting its requirements. The Summary does supply sufficient data regarding the underlying claim, including, *inter alia*, the date the account was opened, the date the debt was incurred, the balance at the time of filing, the origination and transfer of the account, the amount of interest charged-off, and the date of the charge off. It also links the debt directly to the Debtor as it includes Debtor's name, address, phone number, an account number, and a redacted social security number.

 Since the JCS Claim is entitled to *prima facie* validity, it is legally incumbent on Debtor to rebut this status by presenting countervailing evidence. Instead, Debtor chose to reply upon only the bald assertion that the statute of limitations bars the claim. The fact that the account was opened in 1999 and charged-off in 2005 without more does not lead to the expiration of the claim under the Maryland statute of limitations. Debtor has not presented any evidence whatsoever, by affidavit, testimony, or otherwise, that JCS has forfeited the right to collect on the debt because of a failure to timely pursue its rights within the relevant window of opportunity as defined by Maryland law.

---

7. Official Form 10 likewise so states.

Had Debtor submitted such evidence, it would have likely been sufficient to rebut the *prima facie* validity and shift the burden back to the creditor. As JCS failed to participate in this contested matter, it would have been unable to sustain its ultimate burden and Debtor would have likely prevailed. Instead, Debtor decided not to offer any evidence in the face of JCS's purported "default." Debtor cannot defeat the effect of the JCS Claim with unsupported allegations. Indeed, as noted in *Heath, supra,* a proof of claim that meets the more lenient standards of Rule 3001 will prevail over a mere formal objection without more. *Id.*

■ In short, it is this Court's reading of the relevant law that in all but the most unique cases, it is incumbent upon the objecting party to produce evidence as to the basis of its objection in order to overcome a properly filed proof of claim that achieves *prima facie* validity[8]. The Court will not, in this case, unilaterally interpret the somewhat contradictory information included in the Summary to reach the conclusion that the claim is time barred. That is only one possible interpretation. Indeed, the evidence necessary for Debtor to enhance her objection, such as monthly account statements, may already be within her possession. Debtor could also request monthly statements, or other relevant documentation, from JCS directly and if such information is not forthcoming, that fact may provide an additional evidentiary basis to object to the claim[9]. Finally, Debtor can also testify from her own personal knowledge about the status of the account.

■ The fact that JCS has chosen not to participate in this contested matter up to this point does not change the Court's ruling. To reiterate, in her Schedule F Debtor listed Midland Credit/Aspire, predecessor of JCS, as having an undisputed claim in the amount of $6,605, nearly the exact amount listed on the JCS Claim. In the appropriate circumstances, this Court can treat any information contained in the Debtor's bankruptcy schedules as evidentiary admissions, just as it may consider a creditor's failure to respond to an objection to claim. *Campbell,* 336 B.R. at 436[10]. In order to overcome the *prima facie* validity of the claim and Debtor's own admission in her Schedule F, Debtor must produce evidence to rebut the properly assumed *prima facie* legitimacy of the claim. Debtor cannot rely on JCS's failure to respond to

---

8. It is likewise entirely possible that in the appropriate case an objection will be sustained purely on legal grounds, if the grounds are sufficiently articulated and the claim's defect appears on its face.

9. A debtor can seek information by discovery when prosecuting an objection to claim pursuant to Fed. R. Bankr.P. 9014, which incorporates Fed. R. Bankr.P. 7026 and 7028–7037 in contested matters.

10. In *Campbell,* debtors filed several objections alleging that the creditors had not provided proper documentation to support their claims. Each debt was scheduled by the debtors as undisputed. Although none of the creditors filed responses, the court *sua sponte* set the objections in for hearing to provide the debtors the opportunity to assert any facts sufficient to challenge the claims, independent of issues regarding the adequacy of the supporting documentation. At the hearing, no creditors appeared and debtors elected to submit on the pleadings. The bankruptcy court overruled the objections. The 9th Circuit Bankruptcy Appellate Panel, in part elaborating upon its holding in *Heath,* affirmed the bankruptcy court, ruling that the debtors had to submit evidence tending to show a factual dispute as to liability as to the amounts claimed and could not rely solely upon an alleged failure to comply with Rule 3001(c). As a result, the objections were overruled notwithstanding the creditors' default. *Id.* at 435.

the objection without more [11].

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland, ORDERED, that the Motion to Reconsider Order Overruling Objection to Proof of Claim is **denied,** and it is further,

ORDERED, that the second amended Objection to Claim is **denied without prejudice** to the refiling of the same to permit the Debtor a third opportunity to submit evidence in support of the Objection.

---

11. The Court recognizes that the bankruptcy claims filing and objection process operates in a manner that is somewhat counterintuitive as compared to normal civil litigation. Nevertheless, to the extent a measure of unorthodoxy exists it is only a reflection of the legislative policy choices embedded in Section 502(b) and the relevant Bankruptcy Rules. Properly filed claims in bankruptcy are elevated to an impressive level of potency out of respect for the system's demands for efficient, expedient, low-cost operation. Nevertheless, an objector is allowed every legitimate opportunity to seek disallowance of the particular claim. It is simply incumbent upon the objector to make out a viable case in support of the objection in the first instance in order to be in a position to prevail.